451 P.2d 776

Lauren W. GIBBS et al., Plaintiffs and Appellants,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Byron L. Turner and Trans-Western Insurance Agency, Defendants and Respondents.

No. 11431.

Supreme Court of Utah.

March 18, 1969.

9. 108 Utah 523, 161 P.2d 927 (1945).

William G. Gibbs, Salt Lake City, for plaintiffs and appellants.

H. Wayne Wadsworth, Salt Lake City, for defendants and respondents.

CALLISTER, Justice:

Plaintiffs, owners and operators of a ski resort at Alta, Utah, brought suit to recover attorney fees allegedly incurred by reason of defendants' wrongful denial of coverage under a public liability insurance policy. The trial court granted defendants' motion for summary judgment and plaintiffs appeal.

From the pleadings, depositions, documents and affidavits on file herein, it appears that the plaintiffs obtained, through defendants Turner and Trans-Western, a public liability insurance policy with defendant St. Paul Fire and Marine Insurance Company. The expiration date of this policy was January 30, 1964. Prior to this date, defendant Turner, the insurance agent, verbally agreed to renew the policy.

On January 31, 1964, a Mrs. Rothman suffered a fatal accident while using a tow rope operated by plaintiffs, who immediately reported the same to defendants. On the same date, defendants issued a written binder on the renewal policy. The binder contained an exclusion provision that "This binder does not cover liability from the operation of the ski tow." Defendants, at this time, also denied coverage of the accident under the terms of the original policy and the binder.

Subsequently, St. Paul issued a new policy which contained an endorsement excluding liability arising from the operation of the ski tow. However, upon payment of an additional premium, this exclusion was cancelled by another endorsement and the

policy, dated March 2, 1964, was made. retroactive to January 30, 1964.

■ Plaintiffs seem to contend that the verbal binder, which renewed the terms of the original policy, was in force and effect at the time of the accident and that the subsequent renewal policy was not in existence at the time. This, according to plaintiffs' argument, raised a genuine issue as to a material fact which must be resolved; and, therefore, the court below erred in granting summary judgment. We disagree. The subsequent renewal policy contained the same terms and conditions (except as to descriptions of the automobiles covered therein) as the original policy. Therefore, the question as to which policy or binder was in effect is an immaterial fact, and the only issue to be decided was one of law.

Both policies contained the following provision:

* * * the Company shall: (a) defend in his name and behalf any *suit* against the Insured alleging such injury, sickness or disease, damage or destruction and seeking damages on account thereof, even if such *suit* is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any *claim or suit* as it deems expedient.

Also:

The insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of *suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense* other than for such immediate medical and surgical relief to others as shall be imperative at the time of occurrence or accident. [Emphasis added.]

■ It is obvious from the foregoing provisions that the insurer has no duty to investigate, negotiate, settle, or defend the insured unless or until a suit is filed, or at least a claim is made against the insured. It does not appear from the record, and plaintiffs do not dispute that a suit was never filed or claim made for damages arising out of the Rothman accident.

Plaintiffs argue that defendants' wrongful denial of coverage was a breach of the insurance contract and, under the circumstances, it was not only advisable but necessary for them to hire an attorney [1] to make an investigation for their protection in the event a suit was filed or a claim made.

1. The attorney was William G. Gibbs, one of the plaintiffs, who assisted the claim adjusters of defendants in their investigation conducted shortly after the report of the accident.

Plaintiffs' contention, which we reject, is:

The implied obligation to furnish insurance with respect to all the coverages of the policy is independent of the express duty to defend, and such obligation exists even if no claim or action is filed.

The obligation exists even if no occurrence takes place which gives rise to a possible claim. The breach occurs when the coverage is wrongfully denied, and if the insured acted reasonably and prudently as a direct result of such denial, and thereby incurs detriment, then the insurer is liable for the full amount which will compensate the insured for such detriment.

Plaintiffs cite only one case, Walters v. American Insurance Co.,[2] in support of the foregoing proposition. However, even that case is distinguishable from this one in that a claim was made against the insured and he settled the same.

We hold that, under the circumstances herein and under the terms of the insurance contract, there is no legal obligation upon the defendants to reimburse plaintiffs for the cost of their investigation.

Affirmed. Costs to defendants.

CROCKETT, C. J., and HENRIOD, TUCKETT and ELLETT, JJ., concur.

---

2. 185 Cal.App.2d 776, 8 Cal.Rptr. 665 (1960), a decision of an intermediate court of appeals.